UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARYSSA VEGA,

        Plaintiff,

   v.

BROWN ROOFING COMPANY, INC.,

        Defendant.

Case No. 3:21-cv-64 (CSH)

MARCH 14, 2022

## MEMORANDUM AND ORDER GRANTING RENEWED JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

**HAIGHT, Senior District Judge:**

    Maryssa Vega ("Plaintiff") brought this action against her former employer, Brown Roofing Company, Inc. ("Defendant"), to recover for wages and benefits she alleges were due pursuant to federal and state law, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. See generally* Doc. 1.

    The parties now renew a request for settlement approval after this Court expressed concerns with their initial agreement and the parties subsequently agreed to an addendum that modified several terms. *See generally* Docs. 40–43.

    For the reasons stated below, the joint motion is **GRANTED**.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

    Following exchanges of discovery materials pursuant to this District's Initial Discovery Protocols for Employment Cases Alleging Adverse Action, the parties proceeded to a settlement conference before Magistrate Judge Robert Richardson. Docs. 22–23; 36. At the conference, the parties reached an agreement to resolve their dispute. Doc. 36. The Court thereafter

administratively closed the case file. Doc. 37. The parties jointly moved the Court to approve their settlement agreement and to dismiss all of Plaintiff's claims in this litigation with prejudice. Doc. 39.

As part of the settlement agreement, the parties proposed that $49,147.65 of the gross settlement amount (i.e., approximately one-third of the settlement fund) be allocated to Plaintiff's counsel's fees and costs. *Id.* at 2; Doc. 39-1 at 1. In accordance with Second Circuit precedent, the Court ordered Plaintiff's counsel to provide documentation sufficient to support that application for fees and costs, including "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done," *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983), as well as similar, itemized records reflecting counsel's reasonable out-of-pocket expenses, of the type normally charged to fee-paying clients, as may be claimed by Plaintiff's counsel related to this matter. *See* Doc. 40. Plaintiff duly filed the contemporaneous time and expense records of her counsel, Miller Shah LLP and Olivier Schreiber & Chao, LLP, which indicated that Plaintiff's attorneys' actual fees totaled $174,299.50, and their costs totaled $579.69. Doc. 41 at 1–2; Doc. 41-1 at 10; Doc. 41-2 at 3.

The Court then issued its memorandum and order, Doc. 42, on the parties' motion to approve their proposed settlement agreement. In doing so, the Court followed the Second Circuit's instructions to "review FLSA settlements for fairness before approving any stipulated dismissal." *Fisher v. SD Protection, Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). This Court denied the parties' motion without prejudice after identifying several deficiencies in the proposal. Doc. 42. These included its broad release of liability and its confidentiality, non-disparagement, and no-rehire clauses, as well as a failure to show plaintiff's range of possible recovery or other factors necessary to evaluate the fairness of the agreement. *Id.* The Court invited the parties to submit "a revised

proposed settlement agreement . . . that addresses the issues identified by the Court" and stated that the "revised proposed settlement agreement must be accompanied by a memorandum of law explaining—in detail—why the proposed settlement is fair and reasonable under applicable decisions in this Circuit." *Id.* at 9–10.

Several weeks later, the parties filed a modified agreement that narrowed the release of liability and eliminated entirely the confidentiality, non-disparagement, and no-rehire clauses. *See generally* Doc. 43-1. The parties also filed a renewed motion for approval of their agreement in which they summarized the changes made, detailed how the procedural history of the case favored approval of the modified settlement, and provided additional information regarding Plaintiff's range of possible recovery and the nature of the litigation risks faced by the parties. *See generally* Doc. 43.

## II. STANDARD OF REVIEW

The FLSA "is a uniquely protective statute" that is intended "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706–07 (1945)). Given the "unique policy considerations" underlying the statute, stipulated dismissals of FLSA claims with prejudice "require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206; *see also Armenta v. Dirty Bird Grp., LLC*, No. 13CV4603, 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014) ("The FLSA places 'strict limits on an employee's ability to waive claims . . . for fear that employers would coerce employees into settlement and waiver.'" (quoting *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86 JS/MLO, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008))). To prevent abusive settlement practices, and to assess the fairness

and reasonableness of a proposed settlement, the Court considers the totality of circumstances, including:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)); *see also Russell v. Broder & Orland, LLC*, No. 3:17-CV-1237 (VAB), 2018 WL 3104101, at *4–6 (D. Conn. June 22, 2018) (applying these factors).

The Court's analysis of a proposed settlement "is an information intensive undertaking," and "[a]t a minimum, the Court requires evidence as to the nature of plaintiffs' claims, the bona fides of the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). Specific "factors that preclude approval include the presence of an overly broad release that waives claims beyond those related to wage-and-hour issues, a non-disparagement provision that prevents a plaintiff from making truthful statements about her experience litigating the case, and a confidentiality clause that has the same effect." *Doe v. Solera Cap. LLC*, No. 18 CIV. 1769 (ER), 2021 WL 568806, at *1 (S.D.N.Y. Jan. 20, 2021) (citations omitted). The Court must also determine whether any attorneys' fees are reasonable. *Cheeks*, 796 F.3d at 206.

### III. DISCUSSION

This Court previously denied approval in this case for several reasons: a) a no-rehire clause and overly broad non-disparagement and confidentiality clauses, b) an overly broad liability

4

release, and c) a failure to show how the procedural history of the case, Plaintiff's range of possible recovery, and the seriousness of the litigation risks favored approval. Doc. 42. The Court had also expressed concern about d) the absence of documentation to support the application for attorneys' fees and costs. Doc. 40. These factors prevented the Court from approving the original proposed settlement as a fair and reasonable one. The parties have accordingly submitted a modified draft agreement as well as additional documentation and a memorandum of law, and they now renew their request for approval.

The Court concludes that its concerns have been adequately addressed and it approves the re-negotiated settlement agreement submitted on December 10, 2021.

### A. No-Rehire, Non-Disparagement, and Confidentiality Clauses

The original settlement agreement included a no-rehire provision and broad non-disparagement and confidentiality clauses that were impermissible under the caselaw of the Second Circuit. *See* Doc. 39-1 ¶¶ 7–8, 11; Doc. 42 at 7–9. This Court's order instructed the parties that courts in this Circuit deny approval to settlements, such as theirs, that "'contain confidentiality provisions that would undermine the broad remedial purposes of the FLSA,' or contain non-disparagement clauses that are not tailored to exclude 'truthful statements about a plaintiff's experience in litigating her case.' *Solera Cap.*, 2021 WL 568806, at *2 (quotation marks and citations omitted)." Doc. 42 at 7. This Court added that the proposed blanket no-rehire clause was "simply unacceptable," noting that "'[c]ourts in this Circuit have consistently rejected FLSA settlements that seek to prevent plaintiffs from having a future employment relationship with the defendant as contrary to the underlying aims of the FLSA.' *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216 (KMK), 2020 WL 5894603, at *5 (S.D.N.Y. Oct. 5, 2020)

5

(quoting *Burgos v. Northeast Logistics, Inc.*, No. 15-CV-6840, 2018 WL 2376481, at *7 (E.D.N.Y. Apr. 26, 2018))." Doc. 42 at 8–9.

With the modified agreement, the parties have eliminated entirely the no-rehire, confidentiality, and non-disparagement clauses at issue. *Compare* Doc. 43-1 *with* Doc. 39-1 ¶¶ 7–8, 11. Accordingly, the modified agreement resolves these issues.

**B. Release Provision**

The original settlement agreement contained an expansive "general release" of liability

> of and from any and all claims, known and unknown, asserted and unasserted, which [Plaintiff] has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of FLSA, ERISA, Title VII of the Civil Rights Act of 1964; and Medical Leave Act; Connecticut Fair Employment Practices Act, Connecticut Minimum Wage Act, Connecticut Pay Equity and Fairness Act, any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance; any public policy, contract, tort, or common law; or any allegation for costs, fees, or other expenses including attorneys' fees.

Doc. 39-1 at 2 ¶ 4. As this Court explained at the time, this "sweeps far too broadly." Doc. 42 at 6. "Courts in this District and this Circuit have repeatedly stated that broad releases of liability in FLSA settlements are disfavored." *Id.* at 5 (citing *Emrani v. Fairfield Fam. Care, LLC*, No. 3:17-CV-00981 (VAB), 2017 WL 6347978, at *2 (D. Conn. Nov. 21, 2017) and *Flores-Mendieta v. Bitefood Ltd.*, No. 15-CV-4997 (AJN), 2016 WL 1626630, at *2 (S.D.N.Y. Apr. 21, 2016)). While the "release of Plaintiff's Connecticut Minimum Wage Act, Connecticut Pay Equity and Fairness Act, Conn. Gen. Stat. § 31-76k, contract, quasi-contract, and common law public policy claims may be permissible under the circumstances, since Plaintiff has explicitly brought such claims as part of her suit," the wide array of other potential grounds mentioned in the general release, "including Title VII, ERISA, . . . state and local civil or human rights law claims, unknown claims, and claims against non-parties . . . cannot be approved." Doc. 42 at 6. As I wrote at the time,

6

quoting Judge Kaplan's conclusion in *Nights of Cabiria*, 96 F. Supp. 3d at 181, while parties may "waive[] claims relating *to the existing suit* in exchange for a settlement payment," employers may not "erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." Doc. 42 at 7 (internal quotation marks omitted) (emphasis added).

The re-negotiated settlement agreement substantially curtails the scope of the liability release. Now titled a "Release of Claims," Doc. 43-1 at 2 ¶ 4, rather than a "*General* Release of Claims," Doc. 39-1 at 2 ¶ 4 (emphasis added), the new provision covers only the following:

> any and all claims asserted in the Complaint or those that could have been asserted in the Complaint based on the facts alleged against Releasees as of the date of execution of this Agreement, including any alleged violation of FLSA, Connecticut Minimum Wage Act, Connecticut Pay Equity and Fairness Act, and any allegation for costs, fees, or other expenses including attorneys' fees.

Doc. 43-1 at 2 ¶ 4. The parties have complied with this Court's instruction to narrow the release of claims to those relating to the instant lawsuit. The modified release is limited to claims already asserted in the Complaint, or that could have been asserted, based on the facts Ms. Vega has alleged, and the three statutes expressly included—FLSA, Connecticut Minimum Wage Act, and Connecticut Pay Equity and Fairness Act—are the ones Plaintiff charged Defendant with violating in her complaint. *See* Doc. 1 at 1–2. With these modifications, the release of liability is fair and reasonable and can now be approved.

### C. Procedural History of the Case, Plaintiff's Possible Recovery, and Litigation Risks

In its previous order, this Court expressed "satisf[action] that the proposed settlement was reached through arm's-length bargaining, considering the involvement of Judge Richardson," but admonished the parties that the mere fact "of the adversarial nature of the parties' engagement" was "[a]t most . . . *one* factor the Court should consider" in determining the fairness of the settlement. Doc. 42 at 3. This Court was particularly concerned that the parties' early indication of

interest in settling Plaintiff's claims, *see* Doc. 19 at 4, combined with the fact that the only significant motion filed regarded the propriety of certain third-party discovery, *see* Doc. 22 at 1–2, distinguished the case from those such as *Aros v. United Rentals, Inc.*, in which the record reflected "vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time." No. 30:10-CV-73 JCH, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012).

The parties' renewed joint motion presents substantial new information to address these concerns. First, the motion sheds light on the procedural history of the case, indicating that although the motions filed in the case may have been limited in scope, they nonetheless reflect contested litigation to resolve a "bona fide dispute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). Importantly, according to the parties, the third-party discovery issue went directly to Plaintiff's credibility regarding an issue at the heart of the case: whether she was working more than forty hours per week. Doc. 43 at 3–4 (indicating Defendant's belief that Plaintiff had contradicted herself in a statement made under oath). The parties also lay out the essence of their disputes over Plaintiff's retaliation claim and the scope of potential damages. *Id.* Second, the parties demonstrate that the proposed settlement of $147,500 falls fairly within the range of disputed damages. Plaintiff estimates that she could prove approximately $100,000 in wage loss and $100,000 in front pay loss should she succeed on her retaliation claim, and states that she would also seek emotional distress and punitive damages. *Id.* Defendant, in turn, estimates that Plaintiff's claim for wage loss would amount, at most, to $33,000—based on its "records of Plaintiff's actual time worked (in the form of telephone calls and text messages with Defendant's employees and customers)." *Id.* at 3. Defendant believes Plaintiff has no evidence to support a retaliation claim and the parties agree that the recovery of emotional distress damages

and punitive damages would be "less likely" than damages for wage loss or front pay loss. *Id.* at 4. Third, the parties lay out several substantial litigation risks to Plaintiff, including the potential credibility issue mentioned above, a contemplated defense motion for summary judgment, the litigation costs of handling "multiple depositions and voluminous written discovery and document production," and a lapse of time of three or more years before a favorable jury verdict and a win on a contemplated appeal would yield Plaintiff an actual monetary award. *Id.*

In light of these risks, the "bona fide dispute" at issue here, *Lynn's Food Stores*, 679 F.2d at 1354, and the size of the settlement in comparison to the possible range of recovery, the Court concludes that the total value of the settlement is a fair and reasonable one in light of the *Wolinsky* factors, *cf. Wolinsky*, 900 F. Supp. 2d at 335–36.

### D. Attorneys' Fees and Costs

Courts in this Circuit have generally accepted as reasonable fees that represent no more than one-third of the total award, as long as the fee amount is supported by adequate documentation. *See, e.g., Martinez v. Gulluoglu LLC*, 15-cv-2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("Barring unusual circumstances not present here, courts in this District have declined to award fees constituting more than one-third of the total settlement amount in an FLSA action."); *Thornhill v. CVS Pharmacy, Inc.*, 13-cv-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (noting in FLSA action that courts in the Second Circuit "typically approve attorney's fees that range between 30 and 33" percent). This one-third threshold is not, however, dispositive. As the Second Circuit recently held, a "district court shall evaluate the reasonableness of the requested attorneys' fees and costs without using proportionality as an outcome determinative factor." *Fisher*, 948 F.3d at 606. In *Fisher*, the Second Circuit noted that "[w]hile the original proposed split of $23,000 to [Plaintiff's counsel] and $2,000 to [Plaintiff]

9

understandably gave the district court pause, the reasonableness of the fees does not turn on any explicit percentage cap," and remanded for the district court to consider "the most critical factor[:]" "the degree of success obtained." *Id.* at 606–07 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). While attorneys' fees that exceed one-third of the total settlement amount receive scrutiny, they are not categorically prohibited. Rather, the propriety of higher settlement amounts depends on documentation of the underlying services provided. In *Cheeks*, the Second Circuit emphasized that a party seeking attorneys' fees of 40 to 43.6 percent of the total award must provide "adequate documentation to support such a fee award." 796 F.3d at 206 (discussing *Nights of Cabiria*, 96 F. Supp. 3d at 172–82).

In considering the propriety of attorney's fees, "the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee." *Dubois v. Maritimo Offshore Pty Ltd.*, 422 F. Supp. 3d 545, 563 (D. Conn. 2019) (quoting *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)) (internal quotation marks omitted). Factors relevant to determining the reasonableness of rates include whether the rates are the same as those that the attorneys "ordinarily charge," *see, e.g.*, *Humphrey v. Crea*, No. 3:15-CV-01164 (JAM), 2019 WL 3561899, at *4 (D. Conn. Aug. 6, 2019) (adjusting rates downward to remove a $50-per-hour surcharge that attorneys added to their usual rates due to the purported "greater complexity of federal court" than state court).

Here, Ms. Vega would be entitled to receive $98,352.35 under the settlement; her counsel would receive $49,147.65. The total award would therefore equal $147,500. The attorneys' fee would represent approximately 33.32 percent of the total, falling just under the one-third threshold

noted by other courts. That fact alone, however, is not dispositive. Rather, this Court looks to the underlying reasonableness of the proposed fee.

Pursuant to this Court's order, Plaintiff's counsel provided documentation of its fees and costs associated with this litigation. Doc. 41 at 1–2. Counsel propose a lodestar calculation of their fees at $174,299.50, based on contemporaneous time records and ordinary billing rates, along with documented costs of $579.69, but as part of the settlement agreement seek to recover only $49,147.65 in fees and costs. *Id.* at 2. This Court has examined the reasonableness of both the attorneys' fee rates and the hours billed on this matter, and concluded that the proposed settlement agreement's provision of $49,147.65 in fees and costs is a reasonable one.

As a preliminary matter, this Court views as reasonable the $579.69 in costs accounted for by Miller Shah LLP. These costs include computer research and Westlaw access (the need for which is amply supported by the firm's timesheets), filing fees, and a notary fee. *See* Doc. 41-1 at 10. This leaves $48,567.96 in attorney's fees that the Court must assess for reasonableness.

**1. Fee Rates**

The primary attorneys at Miller Shah LLP and Olivier Schreiber & Chao, LLP working on Plaintiff's behalf were, respectively, Ms. Chiharu G. Sekino (with a billing rate that increased from $500 to $525 per hour during the representation) and Ms. Monique Olivier (with a billing rate of $875 per hour). *Id.* at 1 n.1. Ms. Sekino had approximately five years of experience as an attorney as of fall 2020, when Plaintiff hired her firm. *Id.*; Doc. 41-1 at 2. Ms. Olivier had approximately twenty-three years of experience at that time and is described in Plaintiff's motion as a "well[-]respected practitioner in the field of employment law, who . . . regularly handles significant wage and hour matters throughout the United States." Doc. 41 at 2; Doc. 41-2 at 2. Counsel state that

the rates included in their calculation are "the normal hourly rates of all counsel, legal assistants[,] and other timekeepers." Doc. 41 at 1 n.1.

The hourly rates that have been found reasonable in this District are generally lower than those proposed here by the parties. *See, e.g.*, *Dubois*, 422 F. Supp. 3d at 563 (finding attorneys' fee rate of $350 per hour "reasonable in light of the market and the attorneys' relevant experience, as well as the complexity of this case"); *see also, e.g.*, *Kalra v. Adler Pollock & Sheehan, P.C.*, No. 3:18-CV-00260 (KAD), 2021 WL 1123848, at *1 (D. Conn. Mar. 24, 2021) (finding attorneys' rates ranging from $350 to $625 per hour to be reasonable); *NCA Invs. Liquidating Tr. v. Kelly*, No. 3:16-CV-156 (VAB), 2020 WL 8083666, at *3 (D. Conn. Apr. 20, 2020) (finding attorneys' rates of $275 and $500 per hour to be reasonable). But this Court takes notice of the fact that Ms. Sekino and Ms. Olivier practice, respectively, in San Diego and San Francisco, *see* Doc. 43 at 6, and that their higher fees may therefore be reasonable in light of variation in the market for legal services even if they deviate from the norm in Connecticut. *See, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (finding that rates ranging from $275–$575 for associates and $615–$1,000 for partners are "reasonable and in line with prevailing rates in [the Northern District of California, which includes San Francisco] for personnel of comparable experience, skill, and reputation); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (approving rates of $300–$675 for associates and $350–$1,050 for partners and senior counsel); *Hefler v. Wells Fargo & Co.*, No. 16-CV-054979-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving rates of $650–$1,250 for partners and senior counsel and $400–600 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding reasonable rates ranging from $275–

$1600 for partners and of $150–$790 for associates); *Winters v. Two Towns Ciderhouse, Inc.*, XYZ 2021 WL 1889734, at *2 (S.D. Cal. May 11, 2021) (finding that "hourly attorneys' fees of $375 to $750 are reasonable for [the Southern District of California, which includes San Diego]"). Most importantly, Plaintiff's attorneys have achieved substantial success for their client, even considering the scope of her potential claims. If the settlement is approved, she will receive nearly $100,000 in a dispute in which Defendant believes it has a compelling credibility argument to make, all while avoiding the added costs, inconvenience, uncertainty, and delay of prolonged discovery, trial, and appeal. *Cf. Fisher*, 948 F.3d at 606–07 (emphasizing the centrality of the "degree of success obtained" to the reasonableness analysis).

Regardless, the parties' agreement to limit attorneys' fees (exclusive of costs) to $48,567.96 —rather than the proposed lodestar calculation of $174,299.50—makes it unnecessary to resolve the question of the propriety of counsel's proposed fee rates, so long as the hours billed are reasonable and would generate a lodestar greater than or equal to $48,567.96 when multiplied by a reasonable rate. By the Court's calculations, Miller Shah LLP spent approximately 319 hours on this matter, of which approximately 253.1 were spent by Ms. Sekino, and Olivier Schreiber & Chao, LLP spent approximately 36, of which 35.4 were spent by Ms. Olivier. *See generally* Doc. 41-1, 41-2. Multiplying these totals by the conservative hourly rates of $275 for a mid-level associate and $500 for a partner with decades of experience, *cf. NCA Invs. Liquidating Tr.*, 2020 WL 8083666, at *3 (finding those exact rates reasonable in Connecticut), and multiplying the 66.5 hours spent by other individuals by a conservative rate of $100, produces a total lodestar of $93,952.50, well above the agreement's proposed fee (exclusive of costs) of $48,567.96. The Court therefore turns to the reasonableness of the hours billed.

**2. Hours Billed**

Plaintiff's two firms spent a total of 355 hours on this matter. Doc. 41-1; Doc. 41-2. Counsel eliminated from the timesheets the time spent by two supervising partners at Miller Shah LLP in an effort "to be conservative and avoid the reporting of any time that would reflect the duplication of any efforts," and reviewed the time reported by Olivier Schreiber & Chao, LLP to avoid any entries "result[ing] from the inadvertent duplication of any efforts." Doc. 41 at 1 n.1. The Court has reviewed counsel's timesheets for reasonableness and briefly discusses here a representative sampling of how those hours were spent.

At the initial stage of the litigation, Miller Shah LLP devoted approximately 85.1 hours, over the course of September 2020 to January 2021, to consultations with the client, preparation of a demand letter, and preparation of the complaint. *See* Doc. 41-1 at 2–3. Most of Miller Shah LLP's hours were billed by Ms. Sekino at her rates of $500 to $525 per hour. Doc. 41-1. This work entailed at least nine calls and substantial further correspondence with the client; legal research on Connecticut wage and hour laws and private rights of action; review of client documents and preparation of a spreadsheet based on the same (some of which work was completed by an employee with the substantially lower billing rate of $225 per hour); drafting and revising a demand letter and handling a response to the letter; and drafting and revising the complaint. *Id.* Subsequent work on the matter was similarly well-documented and included preparing for what the parties apparently expected to be a lengthy discovery process and the review and distillation of additional information from the client documenting her alleged off-the-clock work. *Id.* at 3–9.

A portion of this time, nearly thirty hours, was devoted to Defendant's subpoena on a third party, United Way of Connecticut, Inc., in connection to its childcare subsidy program, Care 4 Kids. *Id.* at 7–9; *see also* Doc. 28-1 at 1. Defendant served the subpoena on May 26, 2021 for "financial and other information" that Plaintiff submitted to United Way as part of her application.

Doc. 28-1 at 2. Plaintiff moved to quash the subpoena on June 9, 2021. *See generally* Doc. 24. United Way, as a non-party, likewise moved to quash the subpoena the following day. *See generally* Doc. 28. As the parties indicated in their renewed joint motion for approval, this discovery dispute was of great import to the outcome of the case: "Defendant . . . argued that Plaintiff had stated under oath she was only working forty hours per week . . . , and thus her credibility was at issue." Doc. 43 at 2–3.

Olivier Schreiber & Chao, LLP, in turn, devoted approximately 36 hours in total to the representation, almost entirely billed at Ms. Olivier's hourly rate of $875. Doc. 41-2 at 2. The firm's timesheets are well-detailed[1] and reflect, like those of Miller Shah LLP, time spent on stages of the litigation ranging from the demand letter and complaint to potential early settlement efforts; the Rule 26(f) conference and early disclosures; damages evaluations; the third-party subpoena, and motions to quash; and the settlement conference itself. *Id.* at 2–3.

Collectively, the work of Plaintiff's counsel reflects an appropriate division of labor between higher- and lower-billing attorneys and other staff. While some of the time entries reflect work on which multiple attorneys and staff were involved, this does not render such work duplicative. Rather, as Judge Meyer found in *Dubois*, "it seems to me the antithesis of duplicative billing for a senior attorney to follow up with, and check over, the work of a more junior colleague. I am convinced by the attorneys' submissions that the hours they spent on the case are not duplicative." 422 F. Supp. 3d at 563.

The Court finds the number of hours spent by both firms to be reasonable. While the total is substantial for a case at this early posture, the parties have provided the prerequisite "contemporaneous records that specify the attorney, the hours spent, and the nature of the work

---

[1] Plaintiff's attachment, Doc. 41-2, appears to cut off the notes on certain time entries mid-word, but nonetheless provides sufficient detail for the Court to assess the reasonableness of the time accounted for.

done," *Barham v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361 (VAB), 2017 WL 6459502, at *4 (D. Conn. Dec. 18, 2017), for the Court to review the reasonableness of the time spent. Based on my review of these contemporaneous records, I conclude that the time spent was reasonable considering the scope of the legal issues involved, the factual record that Plaintiff's counsel reviewed and analyzed in detail, the third-party discovery motion, and Plaintiff's potential recovery, as well as the degree of success counsel ultimately obtained.

Since the number of hours spent is reasonable and multiplied by reasonable rates would produce a lodestar substantially in excess of counsel's proposed share of $49,147.65 of the settlement, this Court concludes that their proposed share is a fair and reasonable one.

### IV. CONCLUSION

For the reasons discussed above, the Joint Motion for Settlement and Dismissal with Prejudice is therefore **GRANTED**.

The Clerk is directed to close the file and terminate these proceedings.

It is SO ORDERED.

Dated:  New Haven, CT
        March 14, 2022

                                            */s/ Charles S. Haight, Jr.*
                                            CHARLES S. HAIGHT, JR.
                                            Senior United States District Judge